IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS P. RANKIN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 21-1321 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 63 |
| PTC ALLIANCE LLC, BLACK DIAMOND | ) |
| CAPITAL MANAGEMENT, LLC, *and* | ) |
| CARY M. HART | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff Thomas R. Rankin ("Rankin") brings this action against PTC Alliance, LLC ("PTC"), Black Diamond Capital Management, LLC ("BDCM") and Cary M. Hart ("Hart") (collectively, "Defendants"), alleging retaliation in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"). ECF No. 58.

Presently before the Court is a renewed Motion to Dismiss filed on behalf of BDCM, again challenging the sufficiency of Rankin's allegations that it is a "joint employer" for purposes of FLSA liability. ECF No. 63. For the reasons that follow, the Motion to Dismiss is denied.[1]

I.     **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

As the parties are familiar with the facts of this case, and because the Court has already set forth the background of this matter in its earlier Opinion, ECF No. 53, the Court will only set forth the background necessary to address the instant motion. In its earlier Opinion, this Court

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.  ECF Nos. 38, 39, and 44.

dismissed Rankin's claim against BDCM, concluding that he failed to plead sufficient facts to establish that Black Diamond is a joint employer for purposes of an FLSA retaliation claim.

As in Rankin's Amended Complaint, the Second Amended Complaint broadly alleges that "[a]t all times relevant hereto, Defendants collectively constituted a Single Employer and/or Joint Employer to Mr. Rankin." ECF No. 58 ¶ 7; ECF No. 46 ¶ 7. However, the Second Amended Complaint also sets forth the following allegations:

13. Christopher Parker is a Senior Managing Director for BDCM. Mr. Parker served on the Board of Directors and also served as Chairman of the Board of Directors for PTC during Mr. Rankin's employment and at the time of his termination.

14. During Mr. Rankin's employment with Defendants, BDCM was directly involved in all aspects of the management and operations of PTC, including personnel matters. Mr. Parker of BDCM had weekly conference call meetings with Mr. Hart [PTC President and CEO].

17. BDCM employees and owners, including but not limited to Mr. Deckoff[2] and Mr. Parker, were involved in the decision to terminate Mr. Rankin's employment … [and] approved the decision to terminate Mr. Rankin's employment.

21. During Mr. Rankin's employment … Mr. Deckhoff, Mr. Parker, and Ritesh Tanna of BDCM traveled to Pennsylvania on behalf of BDCM to attend management meetings for PTC, including meetings regarding personnel matters, management, and operations.

22. When communicating about matters pertaining to the management of PTC, including personnel matters, employees and owners of BDCM used their BDCM email addresses and phone numbers to conduct business relative to PTC.

23. Through the significant control BDCM exerts over PTC and its Board of Directors, BDCM controls work rules and assignments and sets terms and conditions of employment, including compensation, benefits, and work hours.

25. For example, Mr. Deckoff and Mr. Parker attended a telephone meeting in which Mr. Hart presented on a proposed wellness initiative for employees of PTC Alliance LLC. Mr. Deckoff rejected the proposed wellness initiative and commented, 'Wouldn't it be cheaper if they died?" As Mr. Deckoff from

---

[2] Deckhoff is BDCM's Founder and Managing Principal, and served on PTC's Board of Directors during Rankin's employment and at the time of his termination. ECF No. 58 ¶ 12.

> BDCM rejected the proposed wellness initiative, we were not permitted to move forward with the initiative for employees of PTC.

ECF No. 58.

BDCM moves to dismiss the Second Amended Complaint based on the insufficiency of Rankin's allegations related to BDCM's joint employer status, and, as such, the failure to state a claim for liability under the FLSA. The parties have filed briefs in support and in opposition to the Motion to Dismiss, ECF Nos. 64, 67 and 68. The motion is ripe for consideration.

II.     **STANDARD OF REVIEW**

The United States Supreme Court has held that a complaint is properly dismissed under Federal Rule of Civil Procedure 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a complaint, the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice. The complaint must allege

facts sufficient "to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element[s]' [of his claim]."). Id., 515 F.3d at 234. In sum, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

### III.  DISCUSSION

As the Court previously explained, to state an FLSA claim, the "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014); Davis v. Abington Mem'l Hosp., Nos. 09–cv–5520, 2012 WL 3206030, at *3 (E.D. Pa. Aug.7, 2012) *aff'd on other grounds* 765 F.3d 236 (3d Cir. 2014) ("For a defendant to be liable as an employer under the FLSA, the defendant must be an 'employer' as defined under the Act, in that the defendant must be alleged to have had an employer-employee relationship with the plaintiff."). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer," id. § 203(e)(1), and employ means "to suffer or permit to work." Id. § 203(g). "When determining whether someone is an employer under the FLSA, 'the economic reality rather than the technical concepts is to be the test of employment.' Under this theory, the FLSA defines employer 'expansively,' and with 'striking breadth.' The United States Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" Thompson, 748 F.3d at 148 (quoting In re Enterprise Rent–A–Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 467–68 (3d Cir. 2012)).

District courts seeking to determine whether an employer-employee relationship exists are to analyze four factors – specifically, the alleged employer's:

1. Authority to hire and fire employees;

2. Authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;

3. Day-to-day supervision, including employee discipline; and

4. Control of employee records including payroll, insurance, taxes, and the like.

Id. at 469.

The United States Court of Appeals for the Third Circuit has explained that courts should consider the "total employment situation." Thus, a court may conclude that an employment relationship exists even if all the factors do not point in the same direction. Id. at 469, 471. The Enterprise factors are not meant to be exhaustive and should not be "blindly applied." Id. at 469. Other "indicia of 'significant control'" which "do [ ] not fall neatly within one of the [four] factors," may be persuasive. Thompson at 469-470. And while the level of control must be "significant," it need not be direct. Id. at 468 (citing NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1124 (3d Cir. 1982)).

In Thompson, the Third Circuit reversed the district court's order dismissing the plaintiff's FLSA claim on a theory of joint employment against REMN. The plaintiff's amended complaint alleged that despite the name of another entity (Security Atlantic) on her paystub, REMN conducted her training after she was hired by Security Atlantic, which reflected that "REMN had at least some authority to 'promulgate work rules and assignments.'" 748 F.3d at 149. In addition, the employee responsible for training "allegedly described REMN as Security Atlantic's 'sister company,' a term which suggests some broader degree of corporate intermingling. And the scenario described by [plaintiff], in which she and virtually all other Security Atlantic employees were abruptly and seamlessly integrated into REMN's commercial mortgage business while some

of those same employees continued to be paid by Security Atlantic, supports Thompson's claim that the two companies shared authority over hiring and firing practices." Id. Given that plaintiff had not had an opportunity to conduct discovery as to payroll and taxations documents, disciplinary records, internal corporate communications, or leadership and ownership structures, the Court found that it could not be said that she failed to state a claim upon which relief can be granted. Id.

Similar indicia of significant control of a franchise by the franchisor resulted in the denial of a motion to dismiss in DiFlavis v. Choice Hotels International, Inc., No. 18-3914, 2019 WL 1505860 (E.D. Pa. Apr. 5, 2019). The facts the district court relied on included allegations that the franchisor "maintained financial data on the business, performed quality assurance visits to evaluate compliance with [its] Rules and Regulations, required all [franchise hotel] owners and managers to attend training, provided the [] training program … and more." Id. at *5. The district court observed that compliance with the Rules and Regulations "could have led to the alleged overtime violations in this case." Id.

In this case, Rankin's allegations that BDCM is a private equity sponsor of PTC is insufficient on its own to show that BDCM is a joint employer under the FLSA. Davis, 2012 WL 3206030, at *5 ("Defendants cannot be held liable merely because they have common ownership or are otherwise part of a common enterprise wherein some entities are employers of the named Plaintiffs."). That said, Rankin's remaining allegations at this early stage of the litigation state a plausible claim that BDCM is a joint employer under the factors outlined in Enterprise.[3]

Rankin alleges that Parker and Deckhoff acted on behalf of BDCM as PTC board members to control the conditions of Rankin's employment and his termination. To that end, the Second

---

[3] Depending on the facts revealed during the discovery phase, the joint employer issue may be raised at the summary judgment phase of this case.

Amended Complaint alleges that Parker and Deckhoff participated in weekly conference calls, attended PTC management meetings regarding personnel matters and operations, used BDCM email addresses and telephones to conduct PTC business, rejected a proposal for employee wellness benefits and, most critically, were involved in and approved the decision to terminate Rankin. While discovery may reveal that BDCM had no substantive involvement in Rankin's employment and the decision to terminate him, these allegations at this early stage of the litigation move Rankin's claim that Black Diamond is his joint employer from conceivable to plausible. See Twombly, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

      Accordingly, the Motion to Dismiss for failure to state a claim is denied. An appropriate Order follows.

Dated:  August 17, 2022                                          BY THE COURT:

                                                                       */s/  Maureen P. Kelly*
                                                                       MAUREEN P. KELLY
                                                                       UNITED STATES MAGISTRATE JUDGE

cc:      All counsel of record via CM/ECF