### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS P. RANKIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 21-1321 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | Re: ECF Nos. 87 and 91 |
| PTC ALLIANCE LLC, BLACK DIAMOND | ) | |
| CAPITAL MANAGEMENT, LLC, *and* CARY | ) | |
| M. HART | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Thomas P. Rankin ("Rankin") brings this action against his former employer PTC Alliance, LLC ("PTC"), PTC's chief executive officer Cary Hart ("Hart"), and alleged joint employer Black Diamond Capital Management, LLC ("BDCM") (collectively, "Defendants"). Though his Second Amended Complaint, Rankin asserts that Defendants unlawfully terminated his employment in violation of the anti-retaliation provision of the Fair Labor Standards Act, 29 US.C. § 215(a)(3) ("FLSA"). ECF No. 58.

Presently before the Court is a Motion for Summary Judgment filed by Defendants PTC and Hart, ECF No. 87, and a Motion for Summary Judgment filed BDCM, ECF No. 91. For the reasons below, the Motion for Summary Judgment filed on behalf of PTC and Hart is denied and the Motion for Summary Judgment filed on behalf of Black Diamond is granted.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings including trial and entry of final judgment, with direct review by the United States court of Appeals for the Third Circuit if an appeal is filed.  ECF Nos. 38, 39, and 44.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns whether, as alleged by Rankin, his employment was terminated in retaliation for complaints related to PTC's FLSA violations or, as asserted by Defendants, whether he was terminated because of poor job performance. Unless otherwise noted, the facts taken from the record are either undisputed as stated by the parties, or not fairly disputed on the record.

A.  PTC and Hart

PTC hired Rankin as its Director of Human Resources on September 5, 2018. ECF No. 86 ¶ 1. In this capacity, Rankin reported directly to Hart, PTC's President and Chief Executive Officer. Rankin was responsible for managing all aspects of human resources and working with PTC's Legal Department to ensure compliance with applicable federal, state, and local labor and employment laws. ECF No. 86 ¶¶ 3, 5; ECF No. 106 ¶ 4. Shortly after he was hired, Rankin discovered that PTC misclassified certain positions as exempt from overtime compensation in violation of the FLSA. Id. ¶¶ 7-11. Rankin found no evidence that PTC or Vince Fera ("Fera"), PTC's Associate General Counsel and PTC's prior human resources director, addressed the issue and so he immediately reported the lack of compliance to Dave Sargent, PTC's general counsel, and to Fera. Id. Rankin contends that he raised the FLSA misclassification issue with Hart, who "refused to correct the FLSA violations, and made statements such as 'we can't afford that' and 'don't let legal spend $90,000 on Josh Vaughn at Littler to get our FLSA issues corrected.'" Id. ¶ 41. PTC and Hart dispute Rankin's version of events but concede that Rankin complained to Hart about PTC's potential FLSA violations in August 2019.  Id. ¶ 106.

PTC and Hart contend that over the following months, Rankin displayed poor judgment and behavior. In September 2019, Rankin and Fera disagreed over responsibility for labor negotiations. Rankin sent what he concedes was a "dysfunctional, aggressive, and unprofessional"

email directing Fera to let Rankin take the lead in all labor issues. Id. ¶ 20. Rankin opted not to attend a negotiation session at one of PTC's facilities because he was addressing other matters that Hart considered more significant. Hart states that Rankin's decision was in error given Rankin's prior insistence on taking the lead in labor matters, and that he was forced to direct Rankin to participate in the contract negotiations. ECF No. 90-7 at 4-5; ECF No. 106 ¶¶ 21-24. In December 2019, Hart emailed Rankin to address Rankin's failure to timely submit travel expenses in accordance with PTC policy. Rankin and Hart met to discuss the issue and Hart raised Rankin's failure to take the lead in labor contract negotiations at a PTC facility and PTC's cultural initiative. ECF No. 106  ¶¶ 21, 42. Hart states he also addressed Rankin's violation of PTC's 401(k) policy. Rankin concedes he acted unprofessionally in the meeting and "used an elevated voice and a cuss word when expressing his displeasure during the meeting." Id. ¶ 26. Still, he denies that any issue was discussed in a negative light. Separately, PTC and Hart contend – and Rankin denies – that Rankin also violated PTC's severance pay policy by offering employees amounts that exceeded amounts approved by PTC and that he undermined PTC leadership. Id. ¶¶ 28, 29, 42.

Rankin denies any allegedly poor job performance and contends that each instance relied on by PTC is pretext for unlawful termination. To that end, Rankin points to an email Hart sent after the December 2019 meeting where Hart apologized for his own behavior, praised Rankin for "doing great work for PTC," and mentioned that he wanted to "improve our communication with a regular review cadence so there are no issues in the future." ECF No. 99-3 at 24; ECF No. 106 ¶ 27 (citing ECF No. 99-3 at 12).

Rankin alleges that he continued to complain about PTC's FLSA violations and raised the issue with Fera and another senior executive in January 2020. ECF No. 106 ¶ 71. Rankin told Fera he would report PTC's noncompliance to BDCM or a government agency to try to force Hart to

correct the FLSA violations. Id. In mid-February 2020, Rankin told Dave McDonald, Controller for PTC's Western Plants, that PTC was legally obligated to pay overtime based on non-discretionary bonus payments even though Hart had thus far refused to do so. ECF No. 99-1 ¶ 13.

In February 2020, Hart retained an outside consultant to evaluate PTC's leadership team. Id. ¶ 56. PTC and Hart contend – and Rankin disputes – that the consultant was also retained to investigate reports Hart received about Rankin's performance and actions to undermine PTC leaders. Id. ¶ 56. Rankin and other members of PTC's leadership team individually met with the consultant on February 23 and 24. Id. On February 25, Rankin met with Fera. According to PTC and Hart, Rankin told Fera he believed the consultant's investigation could result in Rankin's termination and Rankin asked Fera if he could get more than 2 weeks of severance pay. Id. ¶ 60. Rankin disputes this version of the conversation and asserts that Fera told Rankin "the decision was made to terminate [coworker] Drennan," and "that while there were concerns about [Rankin], PTC believed he was 'salvageable' – i.e., PTC did not intend to terminate Rankin's employment." Id.

On February 25, 2020, the consultant recommended that PTC terminate Rankin's employment. Hart states he made the decision to terminate Rankin at that time. Id. ¶¶ 62, 64. Hart emailed Christopher Parker and Stephen Deckhoff, who served as members of PTC's Board of Directors, and reported that he had retained a consultant who recommended that Drennan be removed immediately. Hart also explained that he "expected to hear more problems with Tom Rankin my HR director." ECF No. 90-8 at 1.

> Many of my staff have come to complain to me about Tom and am not surprised with the HR consultants report and recommendation to remove Tom immediately.
>
> I want to speak with both of you right away and give you the opportunity to speak with the HR consultant, any of the staff, and findings and recommendation.

4

The situation is urgent now that all of this has come out and must be addressed.

Id.; ECF No. 106 ¶ 72.  Hart contends that he planned to notify Rankin of his termination on Friday, February 28, but PTC's counsel  was unavailable to do so. Id. 76. Rankin disputes that Hart's email reflects that a decision to terminate Rankin had been made as of February 25 or that there were plans in place to terminate him as of that date.

As evidence that a termination decision had not yet been made, Rankin notes that he worked on February 28, 2020, and was asked by Fera to participate in the termination of Drennan's employment on March 2, 2020. ECF No. 99-1 ¶ 30. Rankin spoke with Hart on February 28, and expressed his commitment to working for PTC. ECF No. 106 ¶ 76 (response).

On Saturday, February 29, Rankin removed all personal belongings from his office at PTC's headquarters. On Sunday, March 1, Rankin emailed Hart informing Hart that he decided to take a week of vacation from March 2 to March 6 to consider whether he could continue working for Defendants. Id. ¶ 79 (response); ECF No. 99-3 at 27-39. Rankin demanded as a condition to return to work that Defendants correct all FLSA violations with backpay for adversely affected employees. Id. Over the next week, Rankin renewed his internal complaints related to PTC's FLSA violations and health and safety concerns, and lodged complaints with two federal agencies. Rankin called PTC's corporate hotline on March 1 to report ongoing FLSA violations. ECF No. 94-1 at 25. The call lasted 12 seconds because Rankin was unable to reach anyone and did not leave a message. On March 3, Rankin again called PTC's hotline and left a message with his name and stated that he wanted to make a report about PTC's FLSA and health and safety violations. ECF No. 94-1 at 36-39; ECF No. 99-1 ¶ 37. On March 4, Rankin contacted the United States Department of Labor Wage and Hour Division and lodged a complaint related to PTC's ongoing

FLSA violations and contacted the United States Occupational Health and Safety Administration to report health and safety violations. Id. at 15 – 17; ECF No. 106 ¶¶ 71 (response).

It is undisputed that before lodging his renewed complaints related to FLSA violations, no one at PTC reached out to inform Rankin that he was terminated. On Monday, March 2, PTC sent out an Organizational Announcement under Rankin's name that Drennan was no longer employed by PTC. ECF No. 99-3 at 30. Rankin retained access to all PTC databases, email accounts, and offices through March 9. ECF No. 106 ¶ 64 (response). Rankin also contends he continued to work remotely on PTC matters throughout his vacation. ECF No. 99-1 ¶ 31.

Upon his return to work on Monday, March 9, Rankin was informed that he was terminated from PTC "for poor performance and poor judgment." ECF No. 106 ¶ 97. Rankin asserts he never exhibit poor performance, conduct, or judgment and was terminated by Defendants "in retaliation for his complaints about FLSA violations." Id. (response).

### B. BDCM

BDCM seeks summary judgment in its favor because discovery has failed to develop any evidence to support the Court's exercise of personal jurisdiction over it or to establish that BDCM is a joint employer with PTC. Thus, BDCM contends it cannot be liable to Rankin for violating the anti-retaliation provision of the FLSA. ECF No. 58 ¶¶ 8-26.

As to personal jurisdiction, it is not disputed that BDCM is a private asset management firm with headquarters in Stamford, Connecticut. ECF No. 86 ¶¶ 20, 21. BDCM and its affiliates manage investment funds on behalf of public and private pension plans and other institutional investors. Id. ¶ 22. BDCM asserts it has no offices or employees in Pennsylvania, is not registered to conduct business in Pennsylvania, and it does not own, use, or possess property in Pennsylvania. ECF No. 93 at 8. Despite these largely undisputed facts, the Court found at the motion to dismiss

stage that jurisdiction was properly exercised based on allegations of BDCM's day to day management control over PTC and its alleged participation in Rankin's termination. These allegations were sufficient under the Calder "effects test" to satisfy due process and comport with "fair play and substantial justice." ECF No. 53 at 10-12 (citing Calder v. Jones, 465 U.S. 783 (1984)).

With discovery complete, BDCM renews its argument that personal jurisdiction is lacking because Rankin cannot establish that BDCM exercises actual control over PTC such that invoking jurisdiction over a nonresident corporation is proper. Despite Rankin's reliance on two overlapping corporate leaders, there is no evidence that either acted on behalf of BDCM when and if they approved Hart's termination of Rankin. ECF No. 93 at 16. BDCM contends that this lack of evidence also supports entry of summary judgment in its favor on Rankin's theory that BDCM is liable to him as a "joint employer." Id. at 11.

## II.    STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citations omitted). "A dispute is 'genuine' if 'a reasonable jury could return a verdict for the

nonmoving party.'" Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021) (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating to the court that the undisputed evidence cannot support one or more essential elements of the non-moving party's claim. Celotex, 477 U.S. at 322; see also Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)) (internal quotations omitted). In making this assessment, the court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. New Jersey Dep't of Mil. & Veterans Affs., 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.    DISCUSSION

### A.    PTC and Hart

The FLSA provides that it is unlawful for any person:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on any industry committee.

See 29 U.S.C. § 215(a)(3).

The analysis of claims of unlawful retaliation under the FLSA is conducted pursuant to the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Cononie v. Allegheny Gen. Hosp., 29 F. App'x 94, 95 (3d Cir. 2002). First, the plaintiff must establish a prima facie retaliation claim by showing that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal nexus existed between the protected activity and the employer's adverse action. Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015). Causation may be established by unusually suggestive timing or inferred from "a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other 'evidence gleaned from the record as a whole' that is sufficient to support an inference of retaliatory animus.'" Holt v. Pennsylvania, 683 F. App'x 151, 157 (3d Cir. 2017); Jalil v. Avdel, 873 F.2d 701, 708 (3d Cir. 1989) (finding causal link when plaintiff was terminated two days after engaging in protected activity).

If the plaintiff establishes a prima facie claim, the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for its action. Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). If the defendant meets its burden, the plaintiff must prove that the proffered reason is pretext by pointing to "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or

(2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Cononie, 29 F. App'x at 95 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

PTC and Hart argue that Rankin cannot establish any element of his retaliation claim; thus, summary judgment is properly entered in their favor. ECF No. 88. Rankin responds that PTC and Hart construe the FLSA far too narrowly to preclude application of FLSA's anti-retaliation provision in this case and that the evidence, both direct and circumstantial, raises genuine issues of material fact that require resolution by a jury at trial. ECF No. 97.

Upon review, the Court concludes that: (1) Rankin engaged in protected activity under the FLSA by lodging complaints related to PTC's failure to pay wages; (2) Rankin's termination is an adverse action; (3) the evidence is sufficient, though only barely, to raise genuine issues of material fact related to whether there is a causal connection between Rankin's complaints and his termination and whether PTC's reasons for termination are pretext for retaliation. Therefore, the Motion for Summary Judgment filed on behalf of PTC and Hart is properly denied.

### 1. Protected activity

PTC and Hart advance three grounds to find that Rankin's communications related to alleged FLSA violations are not protected employee activity. First, Rankin's complaints about misclassification and underpayment of overtime "fell within the scope of his duties" as PTC's Human Relations Director and therefore "fall outside the scope of protected conduct under the FLSA." ECF No. 88 at 11. Second, Hart did not perceive Rankin's communications as asserting statutory rights. Third, Hart and PTC did not learn of Rankin's hotline calls or communication with the Department of Labor or PTC's board of directors until after his termination. Thus,

Rankin's belated complaints do not constitute protected activity within FLSA's anti-retaliation provision. None of these arguments support entry of summary judgment in Defendants' favor.

The Court turns first to PTC and Hart's argument that Rankin's role and responsibilities as PTC's human resources director preclude the application of the FLSA. ECF No. 88 at 13-18 (citing McKenzie v. Renberg's Inc., 94 F.3d 1478, 1487 (10th Cir. 1996), Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 629 (5th Cir. 2008), and Claudio-Gotay v. Becton Dickinson Caribe, Ltd, 375 F.3d 99 (1st Cir. 2004)). The circuit courts in the cited cases held that an employee must "step outside" the role and duties he or she was hired to perform in order to "take a position adverse to [his or her] employer or assert any rights under the FLSA." McKenzie, 94 F.3d at 1487.  If an employee's actions reflect assigned duties to assist with the employer's statutory compliance with FLSA obligations, then the employee has failed to signal to the employer that he or she is engaging protected activity under Section 215(a)(3). Hagan, 529 F.3d at 628.

Upon review, and based on Third Circuit precedent, including Uronis v. Cabot Oil & Gas Corp., 49 F.4th 263, 268 (3d Cir. 2022), the Court finds this exception unsupported by the text and purpose of the anti-retaliation provision, which expressly extends protection to "any employee" bringing "any complaint" related to compliance with the FLSA.

The FLSA was enacted to protect workers by establishing minimum wage, maximum hours, and other working conditions. Uronis, 49 F.4th at 268. "Accordingly, Congress included in the FLSA an antiretaliation provision (at Section 15(a)(3)) to encourage employees to assert their rights without 'fear of economic retaliation [which] might often operate to induce aggrieved employees to quietly accept substandard conditions." Id. (quoting Brock v. Richardson, 812 F.2d 121, 124 (3d Cir. 1987)). This provision extends to "any employee" and does not admit of an exception based on the job title or the responsibilities of a terminated employee who has lodged a

complaint. Moreover, as relevant here, an employee is not limited to assert only his or her own

rights, but may lodge a complaint on behalf of others. See, e.g., Dougherty v. Ciber, Inc., No. 1:04-

CV-1682, 2005 WL 2030473, at *5 (M.D. Pa. July 26, 2005). In Dougherty, the district court held

that "[a]lthough Plaintiff's complaint was not made on her own behalf, it made Defendant aware

of potential violations….If proven, Plaintiff's statement would serve to notify Defendant about the

substandard conditions and afford Defendant the opportunity to come into compliance with the

FLSA, which is consistent with the FLSA's remedial and humanitarian purpose. Holding

otherwise would be contrary to the provision's purpose of preventing fear of economic retaliation

and encouraging employees to raise concerns about possible wage and overtime violations." Id.

Interpreting the FLSA to exclude a manager's complaints would also depart from the

longstanding recognition of the FLSA's role as "part of the large body of humanitarian and

remedial legislation enacted during the Great Depression." Brock v. Richardson, 812 F.2d at 124

(citing Tennessee Coal, Iron & Railroad Co. v. Muscoda Loc. No. 123, 321 U.S. 590, 597 (1944)

(given its remedial and humanitarian purpose, the provisions of the FLSA "must not be interpreted

or applied in a narrow, grudging manner")). See also Uronis, 49 F.4th at 269;  Cohen v. BH Media

Grp., Inc., 419 F. Supp. 3d 831, 850 (D.N.J. 2019) (quoting Brock, 812 F.2d at 123) ("[t]he anti-

retaliation provision of the FLSA[ ] is interpreted liberally and protects a wide range of actions.").

Thus, "courts interpreting the anti-retaliation provision have looked to its animating spirit in

applying it to activities that might not have been explicitly covered by the language." Brock, 812

F.2d at 124.

The breadth of the remedial purpose of the FLSA was confirmed in Kasten v. Saint-Gobain

Performance Plastics Corp., 563 U.S. 1, 17 (2011), where the United States Supreme Court held

that it was error to exclude an employee's oral complaints from the scope of FLSA protection for

"any complaint." The United States Court of Appeals for the Seventh Circuit and the district court below concluded that the text of the FLSA does not cover oral complaints, which are not "filed" but are "informal" and "unofficial." Id. Upon review, the Supreme Court found that the text of the FLSA, considered in conjunction with the purpose and context of the FLSA, required an interpretation that protects oral complaints lodged with an employer to the same extent as formal complaints lodged in writing to an agency. The Supreme Court observed that the FLSA includes an enforcement mechanism that relies "not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied." Kasten, 563 U.S. at 11-12.

In line with the intent and purpose of the anti-retaliation provision of the FLSA, the Court therefore declines to adopt the unduly narrow construction of the FLSA urged by PTC and Hart. To the extent that a reasonable jury may conclude that Rankin lodged complaints with PTC related to alleged noncompliance in the classification of employees and the calculation of overtime pay, Rankin's claim is not barred because of his job title or responsibilities.

The remaining arguments advanced by PTC and Hart fare no better because each relies on credibility assessments properly reserved for a factfinder. As argued by PTC and Hart, Kasten requires that an employer be "given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." Kasten, 563 U.S. at 14. That said, permitting an employer's blanket assertion like Hart's here that a complaint was not understood as an FLSA grievance would render the statute unenforceable in most instances. Instead, Hart's statements must be weighed by a factfinder against evidence of his awareness of Rankin's FLSA objections, including Rankin's March 1 email, Rankin's alleged statements in January and February 2020 to Fera and other PTC leadership personnel, and Rankin's calls to

PTC's hotline. The timing and substance of Rankin's complaints, some lodged in the days and weeks before Hart contends he decided to terminate Rankin, present genuine issues of fact not appropriate for consideration by the Court.

For each of these reasons, the Court declines to find that Rankin did not engage in protected activity.

### 2. Adverse action

As the second element of an FLSA retaliation claim, it is undisputed that Rankin was terminated and that termination is an adverse action.

### 3. Causal connection

PTC and Hart next argue that Rankin cannot show a causal link between his alleged protected activities and his termination. ECF No. 88 at 19-25. First, PTC asserts that Rankin's belief as to why he was terminated cannot establish causation given Hart's statement that he terminated Rankin "due to his poor performance, conduct, and judgement," as corroborated by the findings of PTC's consultant. Id. at 21-22. Second, PTC and Hart deny that the timeline of Rankin's FLSA reports suggests retaliatory animus. Third, Hart denies knowing that Rankin lodged FLSA-related complaints before the decision was made to terminate Rankin's employment. Fourth, Hart and PTC contend there was no ongoing antagonism to support a conclusion that Rankin was terminated in retaliation for his FLSA reports. Id. at 23-25.

The evidence marshalled by Rankin, viewed in the light most favorable to him as the nonmoving party and giving him the benefit of all reasonable inferences, raises issues of fact related to whether PTC and Hart retaliated against Rankin because of his FSLA-related complaints lodged in the days and weeks before his termination. If found credible, Rankin's January 2020 complaints to Fera and PTC's controller and his letter to Hart on March 1, 2020 raised anew the

FLSA violations that were purportedly dismissed by Hart in August 2019. A reasonable jury may find that this evidence supports the temporal proximity suggestive of retaliatory animus. A reasonable jury also may conclude that Hart's December 2019 email praising Rankin's job performance and PTC's request that Rankin participate in Drennan's termination on March 2, 2020, are evidence of Rankin's good standing sufficient to shed doubt on PTC's asserted reasons for termination and the timing of Hart's decision. Under these circumstances, Rankin satisfies his obligation to present a prima facie claim of unlawful retaliation.

### 4.   Legitimate non-retaliatory reason and pretext

Because Rankin presents a prima facie claim, the burden shifts to PTC and Hart to articulate a legitimate non retaliatory reason for termination. Marra, 497 F.3d at 300. Defendants present sufficient evidence of performance and temperament issues to meet their burden. Thus, under McDonnell Douglas, the burden shifts back to Rankin to prove that the proffered reasons for termination are pretext. Cononie, 29 F. App'x at 95. In this case, and as explained in connection with the Court's discussion of causation, there is evidence, though scant and subject to credibility determinations, to permit a reasonable jury to conclude that the stated reasons for termination are pretext for unlawful retaliation. This evidence includes the December 2019 letter praising Rankin's performance, the absence of corroborating evidence that Rankin violated PTC's 401(k) or severance policies, PTC's request that Rankin participate in the March 2 termination of another member of the leadership team, and PTC's email under Rankin's signature on March 2 informing the company that Drennan had been terminated. This evidence, construed in the light most favorable to Rankin, is enough to permit a factfinder to reasonably disbelieve PTC's articulated reasons for Rankin's termination and the timing of that decision.

Because the record presents triable issues of fact as to whether Rankin's protected activity caused his termination, the Motion for Summary Judgment filed on behalf of PTC and Hart is properly denied.

### B.    BDCM

In connection with BDCM's earlier Motions to Dismiss Rankin's Complaint and Amended Complaint, this Court considered Rankin's arguments that: (1) BDCM is subject to jurisdiction in Pennsylvania because Parker and Deckoff acted in their dual roles as BDCM managing directors and members of PTC's board of directors when each actively supported PTC's decision to terminate Rankin and, (2) Rankin stated an FLSA retaliation claim against BDCM based on its status as Rankin's "joint employer." ECF Nos. 53, 69. The Court concluded that Rankin alleged sufficient facts, though barely so, to subject BDCM to jurisdiction in Pennsylvania under the "effects test" of Calder v. Jones, 465 U.S. 783 (1984),[2] and to state an FLSA claim against BDCM as Rankin's "joint employer."[3] ECF Nos. 53, 69. The Court pointed to Rankin's allegations that

---

[2] Under the Calder effects test, a plaintiff can establish personal jurisdiction if he demonstrates:

(1)   The defendant committed an intentional tort;

(2)   The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

(3)   The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (quoting IMO Indus. V. Kierkert AG, 155 F.3d 254, 265–66 (3d Cir. 1988)).

[3] The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Thus,

[u]nder the FLSA, multiple persons or entities can be responsible for a single employee's wages as "joint employers" in certain situations. 29 C.F.R. § 791.2. One such scenario occurs where both employers "exert significant control" over the employee, N.L.R.B. v. Browning–Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1124 (3d Cir.1982), "by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(3). Under these circumstances, each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations.

BDCM, through Deckoff as its founder and managing principal and Parker as its senior managing director, exercised significant control over PTC's day to day operations and participated in Rankin's termination in Pennsylvania. However, the Court cautioned that these issues may be revisited at the summary judgment stage if discovery did not support Rankin's allegations. ECF No. 69 at n.3.

With discovery complete, BDCM renews its argument that Rankin cannot establish that BDCM directed any tortious conduct toward Pennsylvania nor can he show that BDCM, as a private equity sponsor for PTC, exercised the requisite control over the terms and conditions of Rankin's employment to render BDCM a "joint employer" under the FLSA. Instead, the evidence of instances of incidental contact aligns with BDCM's investment advisor role and Parker and Deckoff's positions on PTC's Board of Directors, neither of which supports the exercise of jurisdiction over BDCM. See e.g., ECF No. 101 ¶¶ 1, 2, 5, 6, 11, 34, 65-68, 70-72.

Rankin responds that the Calder test is satisfied because Deckoff and Parker simultaneously served as BDCM managing directors and members of PTC Board of Directors and participated in email and telephone communications with Hart – "who is located in Pennsylvania" – "in connection with the retaliatory termination of Mr. Rankin's employment." ECF No. 100 at 7. Missing from Rankin's argument is necessary evidence that Parker and Deckhoff acted on behalf of BDCM and in that capacity, controlled PTC's day to day to operations such that Rankin's allegedly unlawful termination may be imputed to BDCM. United States v. Bestfoods, 524 U.S. 51, 69-70 (1998) (internal citations omitted) ("courts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary,' [thus,] it cannot be enough to establish liability here that dual officers and directors made policy decisions

---

Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 148 (3d Cir. 2014).

and supervised activities at the facility. The Government would have to show that, despite the general presumption to the contrary, the officers and directors were acting in their capacities as CPC officers and directors, and not as Ott II officers and directors, when they committed those acts."). The <u>Calder</u> effects test does not change this result. <u>See</u> <u>In re Diisocyanates Antitrust Litig.</u>, No. 18-1001, 2020 WL 1140245, at *5 (W.D. Pa. Mar. 9, 2020) ("In this Circuit, 'the defendant must manifest behavior intentionally targeted at and focused on the forum for <u>Calder</u> to be satisfied.'" (citations omitted)); <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254, 263-64 (<u>Calder</u> did not change the fact that even in intentional tort cases, the jurisdictional inquiry "focuses on the relations among the defendant, the forum, and the litigation," thus, a plaintiff cannot rely "solely on the geographical locus of the harm caused" but must also show "the defendant's knowledge and intent in committing the tortious activity").

Rankin points to: (1) BDCM's affiliates' investments in PTC, (2) the commonality of two officers between the two corporations, and (3) an email sent by Parker after Rankin's termination requesting BDCM's general counsel to investigate Rankin's allegations of illegal conduct at PTC. ECF No. 100 at 7. However, this evidence does not establish that BDCM "committed an intentional tort" or that BDCM "expressly aimed [its] tortious conduct at the forum."  Missing is evidence to suggest that Parker or Deckoff acted on BDCM's behalf when and if they allegedly approved Rankin's termination. Thus, the evidence does not establish a basis for personal jurisdiction over BDCM under the <u>Calder</u> effects test. <u>See</u>  <u>In re Chocolate Confectionary Antitrust Litig.</u>, 602 F. Supp. 2d 538, 564 n.24 (M.D. Pa. 2009) (absent an evidentiary foundation showing a company, on its own behalf, participated in allegedly tortious conduct, reliance on the <u>Calder</u> effects test is misplaced).  Thus, the Court lacks personal jurisdiction over BDCM and summary judgment on this basis is properly entered.

Alternatively, even if jurisdiction were established, the evidence does not support imposing liability on BDCM under the FLSA. First, Rankin has abandoned his claim that BDCM is a "joint employer" given the absence of any evidence that BDCM exercised the requisite "significant control" over the conditions of Rankin's employment or PTC's day to day management. ECF No. 100 at 8. See In re Enter. Rent-A-Car Wage and Hour Empl. Pract. Litig., 683 F.3d 462, 468 (3d Cir. 2012) ("the alleged employer must exercise 'significant control'"). Instead, Rankin now relies on FLSA's expansive anti-retaliation provision that imposes liability on "any person" who retaliates against an employee for making complaints about FLSA violations. ECF No. 100 at 8 (citing 29 U.S.C. § 215(a)(3)).

In support of this alternative theory of liability, Rankin cites Bowe v. Judson C. Burns, Inc., 137 F.2d 37, 38-39 (3d Cir. 1943), where the Third Circuit held that the FLSA's anti-retaliation provision "is broad enough to include a labor union as well as any other individual, corporation or organization," and thus does not require a direct employment relationship to establish liability. ECF No. 100 at 9.

In Bowe, plaintiffs were a group of drivers and union members who filed suit under the FLSA and alleged that their employer required them to work overtime without appropriate compensation. Bowe, 137 F.2d 37. In a later filed lawsuit, plaintiffs alleged that "the employer and the union, through its officers, … entered into a conspiracy to force the plaintiffs to abandon the suit; that they were threatened with expulsion from the union and with discharge by their employer; that despite these threats, the plaintiffs refused to abandon their suit, and that thereupon their employer discharged them and the union expelled them. The plaintiffs allege also that the actions of the employer and of the union have prevented them from securing other employment." Id. at 38. The district court dismissed the claims against the union based on its conclusion that the

FLSA applied only to employers. The Third Circuit reversed and cited the language of Section 215(a)(3) which "is broad enough to include a union, its officers and members." Id. at 39.

Rankin cites other circuit and district court opinions that like Bowe, involve an active participant in alleged retaliation, or that repeat the basic proposition that the FLSA's anti-retaliation provision applies to "any person".[4] See, Arias v. Raimondo, 860 F.3d 1185, 1189-90 (9th Cir. 2017) (employer's outside attorney was within scope of FLSA anti-retaliation provision for reporting plaintiff's immigrant status to authorities and seeking his deportation in retaliation for plaintiff's FLSA claim against client); Sapperstein v. Hager, 188 F. 3d 852 (7th Cir. 1999) (Section 215(a)(3) retaliation claim was stated against business proprietors who did not meet statutory FLSA sales threshold to qualify as an "employer" but who terminated plaintiffs for asserting FLSA claims); Acosta v. Foreclosure Connection, 903 F 3d 1132, 1136 (10th Cir. 2018) (Section 215(a)(3) retaliation claim could be brought against party who did not meet statutory definition of employer but who fired plaintiffs for asserting wage and hour claims); Wirtz v. Ross Packaging Co., 367 F.2d 549 (5th Cir. 1966) (same). In Meek v. United States, 136 F.2d 679 (6th Cir. 1943), the Sixth Circuit rejected an appeal of a conviction under FLSA's criminal provision arising from a former employer's violation of FLSA's anti-retaliation prohibition. The defendant asserted that he had no control over the business because he had transferred it to his son-in-law some time before the plaintiff employees were terminated for bringing wage and hours claims. "There was evidence, however, that he knew of the complaints before the transfer, that thereafter he handled purchases, did most of the hiring and discharging, had tried to negotiate a lease of the business five months after Winter took over, and that he had told one of the employees that there was no use filing wage claims- that if any one did he would 'fire every damn one of them.'" Id.

---

[4] Rankin also cites Love v. Temple Univ. of Commw. Sys. of Higher Ed., 366 F. Supp. 835, 840 (E.D. Pa. 1973), which acknowledged the holding Bowe but did not involve or resolve a dispute under the anti-retaliation provision.

This evidence was sufficient to support the jury's conclusion that the former owner "exercised enough control of the business to make him responsible for the discriminatory discharges, or, if not directly responsible, that he aided and abetted discharge." Id. Rankin also cites Braxton v. Jackson, No. 18-1946, 2019 WL 4573381 (D. Md. Sept. 20, 2019), where the district court refused to dismiss claims against defendants, including a legal services provider, for filing meritless lawsuits to intimidate plaintiffs into dropping FLSA wage and hour claims. See also Badillo-Rubio v. RF Construction, No. 19-1092, 2022 WL 821421 (M.D. La. March 17, 2022) (same).

The common thread running through every case cited by Rankin is some quantum of proof or, at the motion to dismiss stage, ample allegations to plausibly establish that the third-party *directed and actively participated* in the alleged misconduct because of FLSA-retaliatory animus. Here, Rankin sues BDCM, not Parker and Deckoff.  Rankin has not presented evidence that at any time relevant to this lawsuit, Parker or Deckoff acted on BDCM's behalf and not in their capacity as members of PTC's Board of Directors. To that end, Rankin concedes that, "[a]fter Rankin's termination, he was informed by Vincent Fera, General Counsel for PTC, that the decision to terminate his employment was approved by the Board of Directors— including Mr. Deckoff and Mr. Parker from BDCM." ECF No. 101 ¶ 72. Moreover, even if Parker and Deckoff's conduct could be imputed to BDCM, there is no evidence that either acted because of retaliatory animus. Rankin concedes he did not directly communicate with either director regarding FLSA concerns until March 14, 2020, five days after he was terminated. ECF No. 101 ¶ 52. And if, as alleged, Parker received notice of Rankin's PTC's March 3 hotline call or any other FLSA complaint, there is no evidence supporting an inference that he directed Rankin's termination on that basis or raised the issue as grounds for termination.

Under these circumstances, construing the evidence in the light most favorable to Rankin, as the Court must, he fails to raise a triable issue of fact as to BDCM's liability for his termination under Section 215(a)(3) and his claim fails as a matter of law. Therefore, BDCM's Motion for Summary Judgment is properly granted.

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed on behalf of Defendants PTC and Hart, ECF No. 87, is denied and the Motion for Summary Judgment filed on behalf of Defendant Black Diamond, ECF No. 91, is granted. An appropriate order follows.

Dated: September 28, 2023                               BY THE COURT,

                                                        MAUREEN P. KELLY
                                                        United States Magistrate Judge

cc:      All counsel of record via CM/ECF

22